# EXHIBIT A

Execution Version

## CALL RIGHT ALLOCATION AGREEMENT

This agreement (the "*Agreement*") is entered into by and among Avenue Capital Management II, LP ("*Avenue*"), GSO Capital Partners LP ("*GSO*"), P. Schoenfeld Asset Management LP ("*PSAM*"), Third Avenue Management LLC ("*Third Avenue*") and York Capital Management Global Advisors, LLC ("*York*").   Avenue, GSO, PSAM, Third Avenue and York may each be referred to herein as a "*Party*" and together the "*Parties*."

WHEREAS, on April 29, 2014, Energy Future Holdings Corp. ("*EFH*") and certain of its affiliated Debtors, the Consenting Interest Holders and Consenting Creditors, which include Avenue, GSO, PSAM, Third Avenue and York, entered into a Restructuring Support and Lock-Up Agreement (as amended from time to time, the "*RSA*"), which incorporates, among other documents, a Restructuring Term Sheet (as amended from time to time).

WHEREAS, pursuant to the RSA, the Commitment Parties were granted the unconditional right (the "*Call Right*") to purchase the EFH Non-Guarantee Notes held by Fidelity, which Call Right provides as follows:

Call Right.  At any time before the Effective Date, any one or more of the Commitment Parties shall have the right to purchase from Fidelity all of its EFH Non-Guaranteed Notes for a purchase price equal to 37.15% of par plus accrued and unpaid interest through the Petition Date (the "**Call Right**").

WHEREAS, under the RSA, the Commitment Parties are Avenue, GSO, PSAM, Third Avenue and York.

WHEREAS, by delivery of a letter to Fidelity on May 27, 2014, Avenue and GSO exercised the Call Right as to approximately $423 million face amount of EFH Non-Guaranteed Notes held by Fidelity as of April 29, 2014 (the "*EFH Non-Guaranteed Notes*").

WHEREAS, by delivery of letters to Fidelity on July 17, 2014, PSAM, Third Avenue and York each exercised the Call Right as to their share of the EFH Non-Guaranteed Notes.

WHEREAS, Fidelity has not complied with its obligations with respect to the Call Right.

WHEREAS, the Parties have agreed to the allocation of the EFH Non-Guaranteed Notes subject to the Call Right and certain other related matters as provided herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained herein and intending to be legally bound, the Parties agree that:

1.      Definitions.

(a)  The following terms shall have the respective meanings set forth below for all purposes of this Agreement:

"*Agreement*" is defined in the Preamble.

"*Avenue*" is defined in the Preamble.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware overseeing the Debtors' chapter 11 cases.

"*Call Right*" is defined in the Recitals.

"*Chapter 11 Plan*" means a chapter 11 plan with respect to EFH that is confirmed by the Bankruptcy Court.

"*Disclosure Statement*" means the disclosure statement for the Chapter 11 Plan that is approved by the Bankruptcy Court and is distributed to creditors for solicitation of votes on the Chapter 11 Plan.

"*EFH*" is defined in the Recitals.

"*EFH Non-Guaranteed Notes*" is defined in the Recitals.

"*GSO*" is defined in the Preamble.

"*Majority*" means Parties holding an aggregate Percentage Share equal to or greater than 50.1%. and at least three (3) Parties in number.

"*Market Price*" means the average of the bid prices proposed to be paid on or as of the Trigger Date for any EFH Non-Guaranteed Notes by five (5) Qualified Marketmakers, without regard to the highest and lowest proposed prices and the Qualified Marketmakers proposing such highest and lowest prices.  For this purpose, if more than one proposal has the same highest or lowest price, then only one of such proposals and one of such Qualified Marketmakers shall be disregarded.

"*Party*" and "*Parties*" are defined in the Preamble.

"*PSAM*" is defined in the Preamble.

"*Percentage Share*" means the percentage set forth below, as applicable to each Party:

| Party | Percentage Share |
|---|---|
| Avenue | 36.50% |
| GSO | 25.00% |
| PSAM | 5.65% |
| Third Avenue | 7.85% |
| York | 25.00% |

"*Purchase Price*" means an amount expressed in U.S. Dollars equal to (a) 36.00% of the face amount of the EFH Non-Guaranteed Notes transferred to GSO pursuant to section 2(a) of this Agreement, multiplied by (b) either (i) if the Chapter 11 Plan recovery value set forth in the Disclosure Statement for the EFH Non-Guaranteed Notes is expressed as a fixed amount, then such fixed amount, or (ii) if the Chapter 11 Plan recovery value set forth in the Disclosure Statement for the EFH Non-Guaranteed Notes is expressed as a range, then the lesser of (A) the highest amount of such range or (B) the Market Price.  If a Market Price cannot be obtained because less than five (5) Qualified Marketmakers have submitted proposals, then for purposes of clause (ii) of this definition, sub-clause (A) shall apply.  Under no circumstance will the amount applicable pursuant to clause (b) of this definition be less than 37.15% of the original face amount of the EFH Non-Guaranteed Notes plus accrued and unpaid interest thereon through the Petition Date.

"*Purchase Right*" has the meaning given to such term in section 2(a) of this Agreement.

"*Purchase Right Share*" means the percentage set forth below, as applicable to each of

-2-

Avenue, PSAM, Third Avenue and York:

| Party | Purchase Right Share |
|---|---|
| Avenue | 9.40% |
| PSAM | 9.20% |
| Third Avenue | 12.50% |
| York | 68.90% |

"***Qualified Marketmakers***" means an entity other than a Party or an affiliate of a Party that (a) holds itself out to the public or applicable private markets as standing ready in the ordinary course of business to purchase from customers and sell to customers claims of the Debtors (or enter with customers into long and short positions in claims against the Debtors), in its capacity as a dealer or marketmaker in claims against the Debtors and (b) is, in fact, regularly in the business of making a market in claims against issuers or borrowers (including debt securities or other debt).

"***RSA***" is defined in the Recitals.

"***Third Avenue***" is defined in the Preamble.

"***Trigger Date***" means the first date on which all of the following have occurred or are true: (a) each Party has received all of the face amount of the EFH Non-Guaranteed Notes that it is entitled to receive pursuant to section 2(a) of this Agreement; (b) the Chapter 11 Plan has become effective in accordance with its terms; and (c) none of the Parties is subject to any restrictions on purchasing or selling any securities of the Debtors.

"***York***" is defined in the Preamble.

(b)   Capitalized terms used but not defined in this Agreement shall have the meanings ascribed to them in the RSA.

2.      Allocation of EFH Non-Guaranteed Notes.

(a)      To the extent that all or a portion of the EFH Non-Guaranteed Notes subject to the Call Right are transferred to any of the Parties, whether by agreement, Court order or otherwise, each Party agrees that, subject to section 2(b) below, it shall (i) receive a face amount of EFH Non-Guaranteed Notes so transferred equal to (A) the total face amount of EFH Non-Guaranteed Notes so transferred, multiplied by (B) such Party's Percentage Share, and (ii) pay an amount equal to (A) the total purchase price paid by the Parties for the EFH Non-Guaranteed Notes so transferred, multiplied by (B) such Party's Percentage Share.

(b)      On or after the occurrence of the Trigger Date and until twenty (20) business days after the Trigger Date, each of Avenue, PSAM, Third Avenue and York shall have the right (such right, the "**Purchase Right**") to purchase and receive from GSO such entity's Purchase Right Share of 36.00% of the face amount of the EFH Non-Guaranteed Notes transferred to GSO pursuant to section 2(a) of this Agreement (or, in the event that the EFH Non-Guaranteed Notes are cancelled pursuant to the Chapter 11 Plan, the consideration provided under such Chapter 11 Plan on account of such 36.00% of the face amount of EFH Non-Guaranteed Notes transferred to GSO pursuant to section 2(a) of this Agreement) in exchange for the payment by such entity to GSO of an amount equal to (A) such entity's Purchase Right Share, multiplied by (B) the Purchase Price.  For the avoidance of doubt, if the total face

-3-

amount of EFH Non-Guaranteed Notes transferred to the Parties pursuant to paragraph 2(a) of this Agreement is $423 million, 36.00% of the portion transferred to GSO that is subject to the Purchase Right is approximately a face amount of $38 million of such EFH Non-Guaranteed Notes.

3.     <u>Litigation and Settlement Authority</u>.  The Parties agree that the Majority shall have the right to (a) direct and control any litigation with respect to the Call Right, including the right to suspend or abandon any such litigation, or (b) settle any such litigation or enter into any agreement with Fidelity resolving the dispute with respect to the Call Right.  Any such action taken or settlement entered into that is authorized by the Majority of the Parties shall be binding on all Parties whether or not a Party authorized or approved any such action or settlement.

4.     <u>Legal Fees and Expenses</u>.  All legal fees and expenses incurred in connection with this Agreement or the enforcement of the Call Right, including litigation, mediation, arbitration or settlement, shall be shared ratably by the Parties in accordance with their Percentage Share.

5.     <u>Entire Agreement</u>.  This Agreement contains the entire agreement among the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between or among the Parties relating thereto.

6.     <u>No Oral Modifications</u>.  This Agreement may not be modified other than by a written agreement signed by the Parties hereto against whom enforcement of such modification is sought.

7.     <u>Binding Agreement</u>.  Each person who executes this Agreement represents that he or she is duly authorized to do so on behalf of the respective Party hereto and that each such Party has full knowledge of and has consented to this Agreement.  This Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and permitted assigns.  This Agreement and any rights or obligations of a Party arising under this Agreement may not be assigned without the consent of the other Parties.

8.     <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

9.     <u>Governing Law; Waiver of Jury Trial</u>.  This Agreement shall be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflict of laws principles thereof.  Each Party waives the right to a trial by jury with respect to this Agreement.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of August 1, 2014.

Avenue Capital Management II, LP, on behalf of certain investment funds it advises

By: _____

Name: Marc Lasry

Title: Member

Third Avenue Management LLC, on behalf of certain funds it manages

By: _____

Name:

Title:

GSO Capital Partners LP, on behalf of certain funds and accounts it manages

By: _____

Name:

Title:

York Capital Management Global Advisors, LLC, on behalf of certain funds and/or accounts managed and/or advised by it and/or its affiliates

By: _____

Name:

Title:

P. Schoenfeld Asset Management LP, an investment manager on behalf of certain of its affiliated investment funds and/or accounts

By: _____

Name:

Title:

US_ACTIVE:\44528038\11\47168.0005

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of August 1, 2014.

Avenue Capital Management II, LP, on behalf of
certain investment funds it advises

By: _____

Name:

Title:

Third Avenue Management LLC, on behalf of
certain funds it manages

By: _____

Name:  W. James Hall

Title:  General Counsel

GSO Capital Partners LP, on behalf of certain
funds and accounts it manages

By: _____

Name:

Title:

York Capital Management Global Advisors, LLC,
on behalf of certain funds and/or accounts managed
and/or advised by it and/or its affiliates

By: _____

Name:

Title:

P. Schoenfeld Asset Management LP, an
investment manager on behalf of certain of its
affiliated investment funds and/or accounts

By: _____

Name:

Title:

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of July __, 2014.

Avenue Capital Management II, LP, on behalf of certain investment funds it advises

By: _____

Name:

Title:

Third Avenue Management LLC, on behalf of certain funds it manages

By: _____

Name:

Title:


GSO Capital Partners LP, on behalf of certain funds and accounts it manages

By: _____

Name: JASON S. NEW

Title: SR. MANAGING DIRECTOR

York Capital Management Global Advisors, LLC, on behalf of certain funds and/or accounts managed and/or advised by it and/or its advisors

By: _____

Name:

Title:


P. Schoenfeld Asset Management, an investment manager on behalf of certain of its affiliated investment funds

By: _____

Name:

Title:

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of August 1, 2014.

Avenue Capital Management II, LP, on behalf of certain investment funds it advises

By: _____

Name:

Title:

Third Avenue Management LLC, on behalf of certain funds it manages

By: _____

Name:

Title:

GSO Capital Partners LP, on behalf of certain funds and accounts it manages

By: _____

Name:

Title:

York Capital Management Global Advisors, LLC, on behalf of certain funds and/or accounts managed and/or advised by it and/or its affiliates

By: _____

Name:    Richard P. Swanson
         General Counsel

Title:

P. Schoenfeld Asset Management LP, an investment manager on behalf of certain of its affiliated investment funds and/or accounts

By: _____

Name:

Title:

US_ACTIVE:\44528038\11\47168.0005

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed as of August 1, 2014.

| | |
|---|---|
| Avenue Capital Management II, LP, on behalf of certain investment funds it advises | Third Avenue Management LLC, on behalf of certain funds it manages |
| By: _____ | By: _____ |
| Name: | Name: |
| Title: | Title: |

| | |
|---|---|
| GSO Capital Partners LP, on behalf of certain funds and accounts it manages | York Capital Management Global Advisors, LLC, on behalf of certain funds and/or accounts managed and/or advised by it and/or its affiliates |
| By: _____ | |
| Name: | By: _____ |
| Title: | Name: |
| | Title: |

P. Schoenfeld Asset Management LP, an
investment manager on behalf of certain of its
affiliated investment funds and/or accounts

By: _____

Name:

Title:   **VICK SANDHU, GC & CCO**

US_ACTIVE:\44528038\11\47168.0005